Good morning, and may it please the court. My name is Rob Helwig, and I represent the appellant D7 Roofing in this appeal. This case involves removal jurisdiction in terms on the issue of complete preemption. Contrary to the district court's decision— I know that's the way it's been briefed, but to get past my first base, you have to distinguish San Diego Union v. Garmin and its progeny, for which removal doesn't matter. Your Honor, the courts that have looked at that issue in addressing the issue of complete removal have held that Garmin preemption does not provide complete preemption. That doesn't matter. It ends its lawsuit if Section 7 arguably applies. And it doesn't matter whether it wasn't before the board or not. Well, Your Honor, we would first assert that Section 7 doesn't apply. There are exceptions to Garmin preemption. But that's not argued, besides which the board has assumed jurisdiction, which isn't necessary for Garmin. Garmin is a form of preemption, but the Garmin cases are never argued in terms of complete preemption, because exclusive agency jurisdiction is an incomplete form of preemption. So I say, I know what you're going to argue. You're going to argue what's brief, but if you can't get past that one, or sell me on the Section 7 issue, which is a huge rock to push uphill, I just think a motion to dismiss is not even an issue here, because neither court had jurisdiction. Well, Your Honor, I think that the court in the Fourth Circuit in the Lantz case addressed that. In what case? The Lantz v. Tharp case, the Fourth Circuit. It's 413 Fed Third 435. Is this in the briefs? It is in the briefs, yes, Your Honor. I think that case, in its explanation of complete preemption, specifically – I don't see it in the table, your table of authorities. It should be in there, Your Honor. I know it's in the – If it's just a discussion of complete preemption – It discusses and mentions – It's not in your table of authorities. I'm sorry, Your Honor, for the – Now you've got to give me the name and the citation and a 28-J letter. Yes. It is Lantz v. Tharp, 413 Fed Third 435. Oh, so it's ancient. Fourth Circuit, 2005. And in Lantz v. Tharp, Your Honor, the Fourth Circuit – Please send us a 28-J letter. Okay, Your Honor, and I'm looking at my – Do you know what that is? About a 40? Rule 28-J submits an additional citation. Okay. Your Honor, I will note, I'm looking at my copy of the brief, and I see Lantz on page 6 of the table of authorities. Oh, Lantz. Okay. Sorry if there was a misunderstanding about that.  In Lantz v. Tharp – If all it says is that Garmin is not complete preemption, that's irrelevant. Well, I think it says more than that, Your Honor. I think – But that is the holding in Lantz, right? The holding in Lantz is that there is no complete preemption, right? And then is the rest of the discussion that Judge Wilkinson had, is that dicta? And if not, where exactly in the opinion are you pointing to? Sure. It is in our brief at pages 12 through 13, and it appears in Lantz at 413 Fed 3rd, 441 through 442. And it goes through a discussion of Section 7 and Section 8 and specifically references Garmin and notes that in that case, the defendant's deployment of Garmin proves too much. Garmin may strip state courts of adjudicatory authority, but in the very same breath, it also deprives federal courts of that authority. Now you're looking down, and I can't hear you. I'm sorry. It states that Garmin does not, in Section 7, does not completely preempt the case and also discusses that it doesn't take the case away from the court looking and determining if removal jurisdiction was proper. Well, doesn't it say on page 442 that Garmin may strip the state courts of adjudicatory authority, but in the very same breath, it must also deprive federal courts of that same authority. And so the exclusive competence rests in the NLRB. Doesn't it say that? I'm looking, I mean, I seem to be reading that here. It does reference that, Judge Erickson, but I believe what it also goes on to say is that that is an issue for determination by the state court and does not provide a basis for removal. Well, if the state court finds that there's exclusive agency jurisdiction, it must dismiss. And the removal doesn't matter. The fact that somebody triggered the federal court to have to make the decision, either court has to consider whether it's within the exclusive jurisdiction of the NLRB. And if it is, neither court has jurisdiction. That's it. Respectfully, Judge, the court in Lantz explains that the state court may have a different view, so it does not find that determinative. It notes that the state court … and then the United States Circuit Court of Appeals did not have the authority to decide that the West Virginia courts were divested of their jurisdiction because that was an issue that the West Virginia courts had to make for itself. But it did note that they believed that all courts were divested of jurisdiction, and it was exclusively in the NLRB. It did note that, but it did state, as you just noted, Judge, that the state court had to make that determination. Yeah, and so on federalism grounds, Judge Wilkinson basically wrote for the majority saying that I don't think we can tell the state courts they don't have jurisdiction, but I sure think they don't, right? Isn't that what it says? I think that's a fair reading of the case, yes. I just want to make sure that when I read it that I understood it because, you know, this is not really an area I practiced it. And as the court then and lots went on to say … Basically, this case wasn't removable. Yes. It was not removable. But it was removed, and that's now a given. But whoever removed it unfortunately put the district court on a completely wrong track. That is our position on this appeal, Your Honor. But then you lose unless you win the Section 7 issue, which the failure to put the removal question properly before us leaves us to review. And the district court barely even discusses it. So we have an appeal that's a fish completely out of water. Well, we have to decide the Section 7 question or defer to the NLRB, which has now asserted jurisdiction. I think, Your Honor, ultimately the guidance from the Lotz case is that that decision needs to be made by the state court. We agree that this case should not have been removed to this court. There was no basis for federal question jurisdiction on removal. And we believe that is the error that occurred when the district court in this case failed to remand the case back to state court because it didn't have jurisdiction. It's not that there wasn't federal question jurisdiction. It's that the Section 7 question has to come first. Now, if it had stayed in the state court, and the state court had said there's sufficient violence here to provide an allegation of violence, a potential Garmin exemption, fine. If that had come to federal court, and the federal court had said that, fine. But neither happened. So we have a complete preemption decision that's off the track, and we don't have an answer to the Garmin question. Well, I think we have addressed that issue. Yes, you have. That's why I started saying you better get to that. In the briefing, Your Honor. First, the Supreme Court has noted in several different cases that Garmin preemption, the defense of Garmin preemption, is not all-encompassing. There are exceptions to Garmin preemption. One of those exceptions is set forth more recently in the Glacier Northwest case. In that case, the Supreme Court noted that the NLRA and Garmin preemption does not preempt conduct that poses a foreseeable risk of imminent harm or danger. That's not new. That's in Garmin itself. And so Garmin also – I've been dealing with Garmin for more than 50 years in its progeny, starting in law school. And this is just off the charts, the way this case is presented. Your Honor, as we have addressed in our briefing, the state court claim that was asserted by my client, D7, in this case, arose out of union members going onto the roofs, active construction sites. So access picketing is almost guaranteed to be Section 7-related activity. But in this case, there's no allegation that they were picketing and they were not picketing. They were what? There's no allegation in this case that the union reps were picketing. They were just up on the rooftops. Access to talk to employees about collective bargaining issues. And there's no allegation that they were talking about collective bargaining issues. You brought the case. You're not. They just say this is as pleaded. It's clearly within the arguable exclusive jurisdiction of the NLRB. And we argue that it is not because the act of union reps going onto rooftops, questioning and harassing individuals about who they were, who they work for, creates an inherently dangerous situation when you're going onto an active construction. Section 8A and Section 7 and Section 8A, that argument's a loser. Well, we respectfully believe it is not, Your Honor, and believe we have argued why it is not. But we also believe that. You haven't told me that today going up on rooftops to talk. Okay, well, you can go in the plant shop and talk. You can go on the floor of the plant and talk as long as in solicit union support, as long as you're not disrupting the employer's operations. These exceptions are very, very narrow. Agreed that they are narrow, Your Honor. But we believe they apply in this case and believe that the application of those is a determination that is reserved for the state court. As you noted earlier, we agree. Gotcha. Well, what conduct is alleged to be in violation of Section 7 or Section 8A1? Well, we believe that the conduct is accepted because it creates an imminent risk of danger. By being on rooftops at active work sites. Just being on the active work site is enough. Because if you read the things, Your Honor, it's talking about threatening people, threatening employees, promises to employees that they're going to get something. I mean, there seems to be a lot more specific things listed there than just being on the rooftop creates a risk. Well, we believe that it does and have alleged that it does. And we believe that that activity creates a similar risk of danger that was noted by the court in Glacier Northwest. And that involved basically having, and it was damage in that case, starting a strike after cement trucks had been filled, then striking so that damage would occur because the cement would harden in the cement trucks. Was the work halted as a result of the communications by the union? Yes, the work was halted in the Glacier Basin. No, in your case, in your allegations. Yes, at one site work had to be suspended for four days. So, yes, the work was halted and impacted by the union reps being on an active job site. Suspended by whom? It was suspended at the request of the owner of the property. I'm sorry. It was a customer site. It wasn't your client's site. It was a customer site. It was the client's work site, but it was at a customer's location, which is how is normally the case in the roofing industry. I see that I'm out of time. We believe that the NLRA here does not provide complete preemption. The district court wrongly decided that it did in retaining jurisdiction and failing to remand the case back to state court, and we would request that this court overturn the district court in order that the case be remanded to state court. No, wait. We don't overturn. We were reverse. Are you asking us to overturn Beverly Hills or anything else? We believe that Beverly Hills does not even address the issue of complete preemption. It's not overturned. Reversed. Thank you, Your Honor. I apologize. Any further questions? We just got to get things straight. Thank you.  May it please the Court. Counsel. Good morning. My name is Matthew Geercy. I'm the attorney for Respondent, United Union of Roofers, Waterproofers, and Allied Workers, Local No. 2. First off, I just want to address sort of the nature of what the allegations are and what is addressed and what is not addressed in D7. Why didn't you just move the state court to dismiss this under Garmin? Because unions like federal court. So this is pure forum shopping. No, Your Honor. Given sort of how Garmin is a product of federal courts as well as this court's decision in Beverly Hills as well as the Eastern District of Missouri's decision in Sheppard v. Courtois, we thought that there was a volume of federal court decisions detailing this very issue, thus requiring this matter to be removed from state court to federal court. And in addition, there also is the allegation that we made in the notice of removal that this matter is also completely preempted under Section 303 of the LMRA. Now, in terms of what D7 alleges in its petition, there's no allegations of any injury, any property damage, any harm, any threats, violence of any lost contracts or business opportunities or any damage whatsoever. None of that is alleged in D7's petition. D7's petition is solely that the union is going on to job sites, job sites that D7 does not own or have a property interest in to talk to D7's employees. Other than our Beverly Hills case, what is your best argument for why this is completely preempted? So, as Judge Loken noted with Mr. Helwig, garment preemption is very broad. It's very what? I'm sorry. I'm sorry. It's very broad. And so federal courts under garment defer to the exclusive jurisdiction of the NLRB and it removes jurisdiction not only from state courts but from federal courts as well. And the cases don't talk about complete. I'm sorry. Inserting the term complete preemption into a garment, a discussion of garment application, completely distorts and distracts the analysis. Garment and its progeny don't talk about complete preemption. They talk about what exceptions like violence and some contract issues might not trigger this form of preemption.  Exhaustion of administrative agency can always be called preemption, but it is very distorting to invoke preemption and all of the complexities that other preemption issues trigger into these labor law issues.  Now, I think one thing that is also worth noting is there is a NLRB proceeding that is going forward at this very moment. It's set for trial on November 4th. So, a lot of these issues. It's a non-appeal, isn't it? I'm sorry. Isn't it a non-appeal? Hasn't the board ruled? Well, the board has filed a complaint against D7 Roofing and that complaint is set to be heard by an administrative law judge beginning on November 4th, dealing with these very same matters. In terms of whether the conduct alleged by D7 is covered by the National Labor Relations Act, in terms of whether it's arguably protected or prohibited by the National Labor Relations Act. Those are matters that are set forth and will be heard by the National Labor Relations Board in a matter of six weeks. Garment cases say it doesn't matter how that will come out. Right. The issue is. You can lose. Your client can lose its Section 7 complaint before the board. That doesn't somehow reinvent the wheel in this case. That's correct, Your Honor. The fallout from that is quite different. And as noted, there's some discussion of the Supreme Court's recent decision in 2023 in Glacier Northwest, but Glacier Northwest actually reiterates the breadth of garment preemption and reiterates how broad NLRA preemption is. Because as noted by Judge Loken, it's not just the fact whether the conduct is protected or whether we win, as noted by Justice Barrett, it's whether the conduct is arguably protected or arguably prohibited. And I take your point. And I just want to go back to my earlier question. We still have the question of jurisdiction, right? So how could you remove? Your argument in the brief is that it's complete preemption, whether or not that's off track or not. You're saying the reason the district court could take this is because it's complete, not defensive garment preemption. So other than Beverly Hills, tell me why you think this is that unusual bird where preemption gets you a federal question. So other than Beverly Hills, which obviously discussed at length in the briefs, but the other issue that does specifically involve complete preemption is Section 303 of the Labor Management Relation Act. Okay, so which one are you relying on?  Okay, so all right, we started with. They're both independent reasons that. Start with your stronger one. So, you know, obviously I don't want to pick which children I like best, but I will say there are cases specifically from the Seventh Circuit in the SMART versus, I believe, local 702 case with IBW, where the Seventh Circuit did specifically find that in Section 303 there is complete preemption for Section 303. But there is a circuit split on that. The Ninth Circuit case, which I believe you're alluding to, the discussion in the Ninth Circuit case was more of distinguishing between issues that are inherent in the state police power in terms of, you know, trespass claims for things of that extent versus things that are more economic claims, like tortious interference for business expectancy, which is the claim we have here. And so that was the claim that was also somewhat of that brought in SMART with the Seventh Circuit decision. What do you do under Section 303 that actually says that you may sue in the District Court of the U.S. or any other court having jurisdiction? That's a distinction between 301 and 303 that I don't know if that SMART really addressed, but I'm curious of what your view on that. Well, when we look at one of the factors we look at is what are the remedies that are available under the statute. And so obviously the remedy for D7 in the event it were to assert a 303 claim is either to bring a 303 claim in either federal or state court. As you noted, there is concurrent jurisdiction, but that doesn't remove our ability to remove this matter to the federal court to hear it. And I know as a matter of complete preemption in terms of actually raising a federal question. Because I do agree. I mean, I think that using the word preemption, it's a difficult word to use because it's applied in so many different situations, and I think it's loosely discussed. And so I think, you know, your argument is complete. Correct. And that's where I'm trying to kind of push you here to get your best argument. So Section 301, actually there are cases, forgive me, I don't have it right in front of me, but I believe there is a U.S. Supreme Court case. And I know this because I brought a 301 case in St. Louis County almost ten years ago, and it was argued that this was a 301 case. And obviously there's a U.S. Supreme Court decision, I believe from the 1960s, that says there is concurrent jurisdiction even under 301 between state courts and federal courts because the key language in Section 301 is it may be brought in federal court, not that it has to be brought. I'm just rereading the statement of issues presented, which are controlling for this argument. And the propriety of the removal is not an issue presented. So this fascinating, largely unlitigated 303 question you're arguing, tell me why it's before us. That is an issue that we did bring up, the notice of removal, that was before the district. Yeah, but that's not here. You know our rules, don't you? If it's not in your statement of presented, it's not before us. And it's not argued in the briefs. Why are we meandering down this side? Judge Kelly picks it up because, yeah, it's all over us in the record. But it's not an issue. I believe Section 303 was argued in our briefs. Pardon? I believe the Section 303 preemption was argued in our briefs by both parties. So you can open up, you can nullify their violation of our rule of procedure of what it takes in a brief to present an issue? No. And if you could do it, why did you do it? I don't know if I can answer that question, Your Honor. But, yeah, certainly we did bring this issue before the court, but certainly I'm not looking to avoid this court's ruling. Well, the district court didn't answer it. What's that? The district court didn't answer it. I agree the district court did not address the Section 303 preemption. So you pick up Norris LaGuardia and Section 303 and throw them out as alternatives to bases to affirm? Correct. Issues the district court didn't present? You are inviting big trouble when you do that.  I will say we did present that to the district court. I understand the district court did not rule on those issues. The most we could do is remand, right? I understand. And then the court says on remand, oh, I should have remanded this to the state court. Back you go. Now you've really moved the ball forward, haven't you? I understand, Your Honor. But just to sort of close in terms of what is at issue, obviously, they are not arguing any of the exceptions to current preemption. They're not arguing any threats or violence. Or they do discuss Glacier Northwest. But in Glacier Northwest, there is a sudden cessation of work that caused property damage. Here there was no allegation of sudden cessation of work. And there is no allegation of property damage. So D7's reliance on Glacier Northwest is misplaced because those issues and those exceptions, as specifically noted in Glacier Northwest, do not bear on and do not apply here. And certainly there is no argument from D7 that it even owned the property or even had a right to keep us from accessing the property in terms of having a property right. The board has noted for a long time now that an employer under the National Labor Relations Act has no right to exclude union representatives engaged in Section 7 activity from areas in which it lacks a property interest. And so in terms of the argument of whether there is Section 7 activity or Section 7 conduct, the board has made clear that unless there is an allegation of property interest, then the employer violates that by trying to exclude those from an area where the employer has no property interest. Well, you're arguing, you're doing the November argument to the ALJ. I do understand that there are some concurrent arguments that were made before both. But in terms of arguing in terms of whether there is a Section 7 coverage here, then that is. Now, it just occurred to me, I hadn't thought about this, if the district court did not clearly rule on Garmin or discuss it, I suspect that the briefs to the district court did not clearly present the issue. Why is it appropriate for us now to do what I'm suggesting this morning, which is take this case off the wrong track and put it on the Garmin track? Why doesn't that demand a remand? So I believe we did discuss Garmin, maybe not. When you say discuss, I'm talking about preserving issues.  We chatted about it at a pretrial conference. What do you mean when you say we did discuss? I will say it wasn't directly before the court in terms of the court. This court in Beverly Hills did not discuss or address Garmin. Yeah, Beverly Hills went off on it. It was right result, poor reasoning. We did discuss Garmin in the briefing when it was directly presented to the district court. Where? In the motion to dismiss and in the motion to remand. I believe there was, I'll defer to the documents, but I believe there was some discussion of Garmin there. Obviously, I will defer to the documents themselves. I don't want to misstate anything. I was asking where in the record do we... But I believe if they would have been there, that's where they would have been. I see about a minute left here. So for the reasons that we discussed and for the reasons set forth in our brief, the decision of the district court should be affirmed. Unless there's any other questions, I think that's all I have for this morning. Thank you. Thank you. Well, the case is full of interesting issues and time is up and it's fully presented and we'll take it under advisement.